JOSEPH MCNALLY
Attorney for the United States,
Acting Under Authority Conferred by 28 U.S.C. § 515
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar. No. 281703)
Assistant United States Attorney
International Narcotics, Money Laundering,
  & Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0487/3659
    Facsimile: (213) 894-0141/6269
    E-mail:  rachel.agress@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**3/30/2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ JB ___ DEPUTY

<div align="center">

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>SASHA LIZETTE JIMENEZ,<br>   aka "sa.sweetss,"<br>   aka "sweets,"<br>   aka "Sa,"<br><br>          Defendant. | No. CR  8:23-cr-00034-CJC<br><br>PLEA AGREEMENT FOR DEFENDANT<br>SASHA LIZETTE JIMENEZ |

1.  This constitutes the plea agreement between SASHA LIZETTE JIMENEZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant for conspiracy to commit a bank fraud scheme and aggravated identity theft, described in the agreed-to factual basis set forth in paragraph 11 below.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

1                       DEFENDANT'S OBLIGATIONS

2       2.   Defendant agrees to:

3            a.   Give up the right to indictment by a grand jury and,

4   at the earliest opportunity requested by USAO and provided by the

5   Court, appear and plead guilty to a single-count information in the

6   form attached to this agreement as Exhibit A or a substantially

7   similar form, which charges defendant with conspiracy to commit bank

8   fraud in violation of 18 U.S.C. § 1349.

9            b.   Not contest facts agreed to in this agreement.

10           c.   Abide by all agreements regarding sentencing contained

11  in this agreement.

12           d.   Appear for all court appearances, surrender as ordered

13  for service of sentence, obey all conditions of any bond, and obey

14  any other ongoing court order in this matter.

15           e.   Not commit any crime; however, offenses that would be

16  excluded for sentencing purposes under United States Sentencing

17  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

18  within the scope of this agreement.

19           f.   Be truthful at all times with the United States

20  Probation and Pretrial Services Office and the Court.

21           g.   Agree to and not oppose the imposition of the

22  following conditions of probation or supervised release:  The

23  defendant shall submit defendant's person and any property under

24  defendant's control, including any residence, vehicle, papers,

25  computer and other electronic communication or data storage devices

26  and media, and effects, to suspicion-less search and seizure at any

27  time of the day or night by any law enforcement or probation officer,

28  with or without a warrant, and with or without cause; and if stopped

or questioned by a law enforcement officer for any reason, defendant shall notify that officer that defendant is on federal supervised release and subject to search.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

i.   At or before the time of sentencing, make a prejudgment payment by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $15,000 to be applied to satisfy defendant's anticipated criminal debt.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

j.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

k.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

1          l.   Authorize the USAO to obtain a credit report upon

2    returning a signed copy of this plea agreement.

3          m.   Consent to the USAO inspecting and copying all of

4    defendant's financial documents and financial information held by the

5    United States Probation and Pretrial Services Office.

6          n.   Defendant further agrees:

7               i.   To forfeit all right, title, and interest in and

8    to any and all monies, properties, and/or assets of any kind, derived

9    from or acquired as a result of, or used to facilitate the commission

10   of, or involved in the illegal activity to which defendant is

11   pleading guilty, specifically including, but not limited to, the

12   following:  $44,777 in U.S. currency (collectively, the "Forfeitable

13   Property").

14              ii.  To the Court's entry of an order of forfeiture at

15   or before sentencing with respect to the Forfeitable Property and to

16   the forfeiture of the property.

17              iii. That the Preliminary Order of Forfeiture shall

18   become final as to the defendant upon entry.

19              iv.  To take whatever steps are necessary to pass to

20   the United States clear title to the Forfeitable Property, including,

21   without limitation, the execution of a consent decree of forfeiture

22   and the completing of any other legal documents required for the

23   transfer of title to the United States.

24              v.   Not to contest any administrative forfeiture

25   proceedings or civil judicial proceedings commenced against the

26   Forfeitable Property.  If defendant submitted a claim and/or petition

27   for remission for all or part of the Forfeitable Property on behalf

28   of herself or any other individual or entity, defendant shall and

                                    4

hereby does withdraw any such claims or petitions, and further agrees to waive any right she may have to seek remission or mitigation of the forfeiture of the Forfeitable Property.  Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A) and/or requirements of the Government to commence forfeiture actions pursuant to 18 U.S.C. § 924(d)(1).

vi.  Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

vii. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

viii.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

ix.  That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

o.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence

1  that may be imposed in this case and waives any failure by the Court

2  to advise defendant of this, pursuant to Federal Rule of Criminal

3  Procedure 11(b)(1)(J), at the time the Court accepts defendant's

4  guilty plea.

5  <u>THE USAO'S OBLIGATIONS</u>

6  3.   The USAO agrees to:

7       a.   Not contest facts agreed to in this agreement.

8       b.   Abide by all agreements regarding sentencing contained

9  in this agreement.

10      c.   At the time of sentencing, provided that defendant

11 demonstrates an acceptance of responsibility for the offense up to

12 and including the time of sentencing, recommend a two-level reduction

13 in the applicable Sentencing Guidelines offense level, pursuant to

14 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

15 additional one-level reduction if available under that section.

16      d.   Except for criminal tax violations (including

17 conspiracy to commit such violations chargeable under 18 U.S.C.

18 § 371), not further criminally prosecute defendant for violations of

19 18 U.S.C. §§ 371, 641, 1028, 1028A, 1029, 1343 and 1344 arising out

20 of defendant's conduct described in the agreed-to factual basis set

21 forth in paragraph 11 below.  Defendant understands that the USAO is

22 free to criminally prosecute defendant for any other unlawful past

23 conduct or any unlawful conduct that occurs after the date of this

24 agreement.  Defendant agrees that at the time of sentencing the Court

25 may consider the uncharged conduct in determining the applicable

26 Sentencing Guidelines range, the propriety and extent of any

27 departure from that range, and the sentence to be imposed after

28

consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 24 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSE</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in the sole count of the information, that is, conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, the following must be true:  (a) there was an agreement between two or more persons to commit the crime of bank fraud in violation of 18 U.S.C. § 1344(2); and (b) defendant became a member of the conspiracy knowing of at least one its objects and intending to help accomplish it.

5.   Defendant further understands that the elements of the crime of bank fraud, in violation of 18 U.S.C. § 1344(2), the object of the conspiracy charged in the sole count of the information, are: (1) defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) the

defendant acted with the intent to defraud; and (5) the financial institution was federally insured.

### PENALTIES AND RESTITUTION

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1349, Conspiracy to Commit Bank Fraud, as charged in the Information, is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1 million or twice the gross gain or loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any

8

losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charge not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $2,304,203.90, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

1  Defendant understands that while there may be arguments that

2  defendant can raise in immigration proceedings to avoid or delay

3  removal, removal is presumptively mandatory and a virtual certainty

4  in this case.  Defendant further understands that removal and

5  immigration consequences are the subject of a separate proceeding and

6  that no one, including her attorney or the Court, can predict to an

7  absolute certainty the effect of her conviction on her immigration

8  status.  Defendant nevertheless affirms that she wants to plead

9  guilty regardless of any immigration consequences that her plea may

10  entail, even if the consequence is automatic removal from the United

11  States.

12  <center>FACTUAL BASIS</center>

13  11.  Defendant admits that defendant is, in fact, guilty of the

14  offense to which defendant is agreeing to plead guilty.  Defendant

15  and the USAO agree to the statement of facts provided below and agree

16  that this statement of facts is sufficient to support a plea of

17  guilty to the charge described in this agreement and to establish the

18  Sentencing Guidelines factors set forth in paragraph 13 below but is

19  not meant to be a complete recitation of all facts relevant to the

20  underlying criminal conduct or all facts known to either party that

21  relate to that conduct.

22  <center>Conspiracy to Commit EDD Fraud and Identity Theft</center>

23  Beginning no later than in or around March 2020 and continuing

24  until at least in or around March 2022, in Los Angeles County, within

25  the Central District of California, and elsewhere, defendant

26  conspired and agreed with others known and unknown to execute a

27  fraudulent scheme to deceive and cheat and obtain money from

28  California Employment Development Department ("EDD") which

<center>10</center>

administered unemployment insurance ("UI") benefits for residents of California, including Pandemic Unemployment Assistance benefits to individuals who were unemployed because of the COVID-19 pandemic ("pandemic benefits"), and Bank of America, NA ("Bank of America"), a financial institution that was insured by the Federal Deposit Insurance Company, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

As part of their scheme, defendant and her coconspirators would obtain stolen personal identifying information ("PII") of victims, including on dark-web internet websites, and defendant would maintain that victim PII in notebook ledgers and other locations.  Defendant and coconspirators would use the victims' PII to submit fraudulent online applications to EDD for UI benefits, including pandemic benefits (the "fraudulent EDD applications").  Defendant and conspirators would assume the victims' identities and use the victims' PII to provide materially false information to EDD on the fraudulent EDD applications, including to certify to EDD under the penalties of perjury that that the alleged applicants were residents of California who were unemployed as a direct result of the COVID-19 pandemic.  The alleged applicants included individuals who resided outside the state of California or were deceased, or who were otherwise not eligible for UI benefits, including pandemic benefits. Defendant and coconspirators would provide EDD with a set of common mailing addresses for multiple applications, that they controlled.

By submitting the fraudulent EDD applications, defendant and other coconspirators would cause EDD to authorize pandemic benefits to be provided to individuals who were ineligible for pandemic

benefits, including individuals who were ineligible for pandemic benefits because they resided outside the state of California or were deceased, among other things.

After EDD approved the fraudulent EDD applications and disbursed the pandemic benefits funds to the EDD debit accounts, and Bank of America issued the EDD debit cards linked to those accounts, defendant and her coconspirators would fraudulently assume the identities of the EDD debit account holders and use the corresponding EDD debit cards to make fraudulent cash withdrawals of pandemic benefits from ATMs in Los Angeles and Orange Counties in the Central District of California, as well as San Diego County in the Southern District of California, and Maricopa County in the District of Arizona, including at ATMs that Bank of America operated.

In furtherance of the conspiracy and to accomplish its objects, defendant, together with her coconspirators, on or about the dates set forth below, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

- On July 28, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim N.S., an out-of-state resident, which was approved by EDD, using N.S.'s PII contained in defendant's ledgers.

- On July 29, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim S.S., an out-of-state resident, which was approved by EDD, using S.S.'s PII contained in defendant's cell phone.

- On August 9, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim J.B., an out-of-state resident, which was approved by EDD, using J.B.'s PII contained in defendant's cell phone.

- On August 25, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim D.L., an out-of-state resident, which was approved by EDD, using D.L.'s PII and a common mailing address, which the coconspirators, including defendant and other coconspirators had access to and controlled.

- On August 26, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim C.K., an out-of-state resident, which was approved by EDD, using C.K.'s PII and a common mailing address, which the coconspirators, including defendant and other coconspirators had access to and controlled.

- On August 28, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim S.G., an out-of-state resident, which was approved by EDD, using S.G.'s PII contained in defendant's cell phone.

- On August 28, 2020, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim R.B., a victim who died in 2015, using R.B.'s PII and a common mailing address, which the coconspirators, including defendant and other coconspirators had access to and controlled.

13

1      - On or about April 20, 2021, a coconspirator texted defendant,

2          "It said the funds were put into the account I sent to check

3          rn but she turned this card off or something," to which

4          defendant responded "What card."  The coconspirator

5          responded, "The edd one member u gave it to me???" to which

6          JIMENEZ responded "Ya."  The coconspirator continued, "I

7          found it n that's what made me log into her account n that's

8          why I said maybe we can still get money."

9      - On July 12, 2021, coconspirators electronically filed a

10     fraudulent application for pandemic assistance benefits in

11     the name of victim I.S., an out-of-state resident, which was

12     approved by EDD, using I.S.'s PII contained in defendant's

13     ledgers.  The application claimed that I.S. was "Laid Off/No

14     Work" on July 10, 2021.  I.S. has no record of employment in

15     California with EDD at any time from 2018 through the July

16     2022, and had an out-of-state driver's license from 2017

17     through the present.  In total, $14,250 in fraudulent

18     unemployment benefits were issued in connection with the EDD

19     debit card in the name of I.S.

20     - On July 13, 2021, coconspirators electronically filed a

21     fraudulent application for pandemic assistance benefits in

22     the name of victim T.M., an out-of-state resident, which was

23     approved by EDD, using T.M.'s PII contained in defendant's

24     ledgers.

25     - On July 30, 2021, coconspirators electronically filed a

26     fraudulent application for pandemic assistance benefits in

27     the name of victim S.O., an out-of-state resident, which was

28

approved by EDD, using S.O.'s PII contained in defendant's ledgers.

- On August 1, 2021, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim M.T., an out-of-state resident, which was approved by EDD, using M.T.'s PII contained in defendant's ledgers.

- On August 14, 2021, defendant, using an EDD debit card ending in 6067, issued in the name of victim I.S., withdrew $1,000 from a Bank of America ATM in North Hollywood, Los Angeles County, within the Central District of California.

- On August 15, 2021, defendant, using an EDD debit card ending in 6067, issued in the name of victim I.S., withdrew $1,000 from a Bank of America ATM in North Hollywood, Los Angeles County, within the Central District of California.

- On August 18, 2021, a coconspirator, using an EDD debit card ending in 6067, issued in the name of victim I.S., withdrew $1,000 from a Bank of America ATM in Orange County, within the Central District of California.

- On August 25, 2021, coconspirators electronically filed a fraudulent application for pandemic assistance benefits in the name of victim M.M.C., an out-of-state resident, which was approved by EDD, using M.M.C.'s PII contained in defendant's ledgers.

- On August 31, 2021, defendant, using an EDD debit card ending in 4902, issued in the name of victim M.T., withdrew $1,000 from a Bank of America ATM in San Diego County, within the Southern District of California.

- On September 3, 2021, defendant, using an EDD debit card
  ending in 4902, issued in the name of victim M.T., withdrew
  $1,000 from a Bank of America ATM in San Diego County, within
  the Southern District of California.
- On September 27, 2021, defendant, using an EDD debit card
  ending in 9312, issued in the name of victim T.M.B., withdrew
  $1,000 from a Bank of America ATM in Scottsdale, within the
  District of Arizona.

In total, the fraud scheme executed by defendant and her co-conspirators caused the issuance of at least approximately $2,804,508.00 in fraudulent unemployment benefits to EDD debit accounts, of which at least $2,304,203.90 was withdrawn from EDD debit accounts.  Victims of defendant's fraudulent schemes include EDD, Bank of America, N.S., S.S., J.B., D.L., C.K., S.G., R.B., I.S., T.B., S.O., M.T. and M.M.C., and other victims both known and unknown.

### Conspiracy to Commit Check Fraud

Beginning no later than in or about June 2021, and continuing until at least in or about March 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant conspired and agreed with others known and unknown to execute a fraudulent scheme to obtain money and other property owned by victims, and in the custody and control of various federally insured financial institutions, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  At all relevant times, defendant and her coconspirators acted with the intent to defraud.  As part of their scheme, defendant and her coconspirators used victim account

16

information provided by a coconspirator, CC-1, who was an employee of a federally insured financial institution, to create and deposit fraudulent checks drawn on victim accounts into third party accounts. On or about June 7, 2021, defendant used her Cash App account to pay CC-1 a sum of $500 for CC-1's role in the conspiracy.  Defendant also accepted payments into her Cash App account on behalf of coconspirators engaging in the check fraud scheme.

<div align="center">SENTENCING FACTORS</div>

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(A)(1) |
| Specific Offense Characteristics | | |
| Losses between $1,500,000 and $3,500,000 | +16 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Ten or more victims | +2 | U.S.S.G. § 2B1.1(b)(2) |

| Unauthorized use of means of identification to produce or obtain any other means of identification | +2 | U.S.S.G. § 2B1.1(b)(11) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

16. Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF RETURN OF DIGITAL DATA</u>

17.   Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

1    LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

2        19.   Defendant agrees that, provided the Court imposes a term of

3    imprisonment within or below the range corresponding to an offense

4    level of 24 and the criminal history category calculated by the

5    Court, defendant gives up the right to appeal all of the following:

6    (a) the procedures and calculations used to determine and impose any

7    portion of the sentence; (b) the term of imprisonment imposed by the

8    Court; (c) the fine imposed by the Court, provided it is within the

9    statutory maximum; (d) to the extent permitted by law, the

10   constitutionality or legality of defendant's sentence, provided it is

11   within the statutory maximum; (e) the amount and terms of any

12   restitution order, provided it requires payment of no more than

13   $2,304,203.90; (f) the term of probation or supervised release

14   imposed by the Court, provided it is within the statutory maximum;

15   and (g) any of the following conditions of probation or supervised

16   release imposed by the Court: the conditions set forth in the Second

17   Amended General Order 20-04 of this Court; the drug testing

18   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

19   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20       20.   The USAO agrees that, provided (a) all portions of the

21   sentence are at or below the statutory maximum specified above and

22   (b) the Court imposes a term of imprisonment within or above the

23   range corresponding to an offense level of 24 and the criminal

24   history category calculated by the Court, the USAO gives up its right

25   to appeal any portion of the sentence, with the exception that the

26   USAO reserves the right to appeal the following:  the amount of

27   restitution ordered if that amount is less than $2,304,203.90.

28

21.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.   Defendant understands that these waivers include, but are not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<div align="center">RESULT OF WITHDRAWAL OF GUILTY PLEA</div>

22.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1    ## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2        23.  Defendant agrees that if the count of conviction is

3    vacated, reversed, or set aside, both the USAO and defendant will be

4    released from all their obligations under this agreement.

5    ## EFFECTIVE DATE OF AGREEMENT

6        24.  This agreement is effective upon signature and execution of

7    all required certifications by defendant, defendant's counsel, and an

8    Assistant United States Attorney.

9    ## BREACH OF AGREEMENT

10       25.  Defendant agrees that if defendant, at any time after the

11   signature of this agreement and execution of all required

12   certifications by defendant, defendant's counsel, and an Assistant

13   United States Attorney, knowingly violates or fails to perform any of

14   defendant's obligations under this agreement ("a breach"), the USAO

15   may declare this agreement breached.  All of defendant's obligations

16   are material, a single breach of this agreement is sufficient for the

17   USAO to declare a breach, and defendant shall not be deemed to have

18   cured a breach without the express agreement of the USAO in writing.

19   If the USAO declares this agreement breached, and the Court finds

20   such a breach to have occurred, then: (a) if defendant has previously

21   entered a guilty plea pursuant to this agreement, defendant will not

22   be able to withdraw the guilty plea, and (b) the USAO will be

23   relieved of all its obligations under this agreement.

24       26.  Following the Court's finding of a knowing breach of this

25   agreement by defendant, should the USAO choose to pursue any charge

26   that was either dismissed or not filed as a result of this agreement,

27   then:

28

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the
Court, (b) correct any and all factual misstatements relating to the
Court's Sentencing Guidelines calculations and determination of
sentence, and (c) argue on appeal and collateral review that the
Court's Sentencing Guidelines calculations and the sentence it
chooses to impose are not error, although each party agrees to
maintain its view that the calculations in paragraph 13 are
consistent with the facts of this case.  While this paragraph permits
both the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the facts agreed to in this agreement, this
paragraph does not affect defendant's and the USAO's obligations not
to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional

24

1 promise, understanding, or agreement may be entered into unless in a
2 writing signed by all parties or on the record in court.

3                  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      31.  The parties agree that this agreement will be considered
5 part of the record of defendant's guilty plea hearing as if the
6 entire agreement had been read into the record of the proceeding.

7 AGREED AND ACCEPTED

8 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF
9 CALIFORNIA

10 JOSEPH MCNALLY
   Attorney for the United States,
11 Acting Under Authority Conferred by
   28 U.S.C. § 515

12
   RACHEL AGRESS  Digitally signed by RACHEL AGRESS
13                Date: 2023.03.29 16:38:16 -07'00'

14 _____        _____
   RACHEL N. AGRESS                           Date
15 Assistant United States Attorney

16 _____        03-17-23
   SASHA LIZETTE JIMENEZ                       _____
17 Defendant                                   Date

18 _____        3-17-23
   MATTHEW LOMBARD                             _____
19 Attorney for Defendant                      Date
   SASHA LIZETTE JIMENEZ

20

21                      CERTIFICATION OF DEFENDANT

22      I have read this agreement in its entirety.  I have had enough
23 time to review and consider this agreement, and I have carefully and
24 thoroughly discussed every part of it with my attorney.  I understand
25 the terms of this agreement, and I voluntarily agree to those terms.
26 I have discussed the evidence with my attorney, and my attorney has
27 advised me of my rights, of possible pretrial motions that might be
28 filed, of possible defenses that might be asserted either prior to or

                                 25

1   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

2   of relevant Sentencing Guidelines provisions, and of the consequences

3   of entering into this agreement.  No promises, inducements, or

4   representations of any kind have been made to me other than those

5   contained in this agreement.  No one has threatened or forced me in

6   any way to enter into this agreement.  I am satisfied with the

7   representation of my attorney in this matter, and I am pleading

8   guilty because I am guilty of the charge and wish to take advantage

9   of the promises set forth in this agreement, and not for any other

10  reason.

11  _____        3-17-2023

12  SASHA LIZETTE JIMENEZ                    Date
    Defendant

13

14

15                 CERTIFICATION OF DEFENDANT'S ATTORNEY

16       I am SASHA LIZETTE JIMENEZ's attorney.  I have carefully and

17  thoroughly discussed every part of this agreement with my client.

18  Further, I have fully advised my client of her rights, of possible

19  pretrial motions that might be filed, of possible defenses that might

20  be asserted either prior to or at trial, of the sentencing factors

21  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

22  provisions, and of the consequences of entering into this agreement.

23  To my knowledge: no promises, inducements, or representations of any

24  kind have been made to my client other than those contained in this

25  agreement; no one has threatened or forced my client in any way to

26  enter into this agreement; my client's decision to enter into this

27  agreement is informed and voluntary; and the factual basis set forth

28

                                   26

in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

/s/[1]                                              3/29/2023

MATTHEW LOMBARD                                     Date

Attorney for Defendant
SASHA LIZETTE JIMENEZ

---

[1] I hereby attest that the signatory listed above, on whose behalf certification is submitted, concurs in the filing's content and has authorized the filing.

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. |
|---|---|
|        Plaintiff, | I N F O R M A T I O N |
|        v. | [18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud; 18 U.S.C. § 982: Criminal Forfeiture] |
| SASHA LIZETTE JIMENEZ,<br>  aka "sa.sweetss,"<br>  aka "sweets,"<br>  aka "Sa," | |
|        Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   The California Employment Development Department ("EDD") administered unemployment insurance ("UI") benefits for residents of California, including Pandemic Unemployment Assistance benefits to individuals who were unemployed because of the COVID-19 pandemic ("pandemic benefits").

2.   To qualify for UI benefits, including pandemic benefits, a California resident had to submit to EDD an application for the

benefits; provide EDD with personal identifying information ("PII"), including the applicant's name, date of birth, and social security number; and certify to EDD under the penalties of perjury that the COVID-19 pandemic had directly and adversely affected the applicant's employment.

3.   Applications for UI benefits, including pandemic benefits, could be submitted to EDD online.  An individual who applied online for benefits would provide EDD with an email address ("account email address") in addition to the applicant's regular mailing address ("account mailing address").

4.   Individuals who resided outside the state of California, or were deceased, were ineligible for UI benefits, including pandemic benefits, among other excluded categories.

5.   After a person submitted an application for UI benefits, including pandemic benefits, EDD would transmit an email to the account email address provided on the application confirming the submission of the application and, thereafter, would send correspondences related to the application and the UI benefits, including pandemic benefits, to the account email address.

6.   Once EDD approved the application and granted pandemic benefits to the applicant, EDD would create a debit account ("EDD debit account") with Bank of America, NA ("Bank of America").  A debit card linked to the EDD debit account would then be mailed to the address associated with the account.

7.   EDD typically deposited UI benefits, including pandemic benefits, to the EDD debit account.  The debit card could be used to withdraw the benefits from the EDD debit account using automated

teller machines ("ATMs"), including ATMs that Bank of America operated.

8. Once approved for pandemic benefits, the recipient of the benefits would be required to periodically recertify under the penalty of perjury that, among other things, the recipient was unemployed due to the COVID-19 pandemic and therefore remained eligible to receive pandemic benefits.

9. Bank of America was a financial institution that was insured by the Federal Deposit Insurance Company ("FDIC").

B.   THE OBJECT OF THE CONSPIRACY

10. Beginning no later than in or around March 2020, and continuing until at least in or around March 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant SASHA LIZETTE JIMENEZ, also known as ("aka") "sa.sweetss," aka "sweets," aka "Sa," and others known and unknown to the United States Attorney, conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344(2).

C.   MANNER AND MEANS OF THE CONSPIRACY

11. The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

    a. Defendant JIMENEZ and other conspirators would acquire the PII, such as the names, dates of birth, and social security numbers, of individuals ("victims"), including identity-theft victims, who were not eligible for UI benefits or pandemic benefits because they resided outside the state of California or were deceased. For example, defendant JIMENEZ and others would obtain stolen PII of victims, including from dark-web Internet websites, and

1    defendant JIMENEZ would maintain that victim PII in notebook ledgers

2    ("defendant JIMENEZ's ledgers") and other locations.

3           b.   Defendant JIMENEZ and other conspirators would use the

4    victims' PII to submit fraudulent online applications to EDD for UI

5    benefits, including pandemic benefits (the "fraudulent EDD

6    applications").

7           c.   Defendant JIMENEZ and other conspirators would assume

8    the victims' identities and use the victims' PII to provide

9    materially false information to EDD on the fraudulent EDD

10   applications, including certifying to EDD under the penalties of

11   perjury that the alleged applicants were residents of California who

12   were unemployed as a direct result of the COVID-19 pandemic.  The

13   alleged applicants included individuals who resided outside the state

14   of California or were deceased, or who were otherwise not eligible

15   for UI benefits, including pandemic benefits.  For example, defendant

16   JIMENEZ and other conspirators would submit fraudulent EDD

17   applications on which they provided materially false information

18   using the identities of victims N.S., S.S., J.B., D.L., C.K., S.G.,

19   R.B., J.D., I.S., T.B., S.O., M.T. and M.M.C., all of whom were not

20   eligible for UI benefits, among other victims.

21          d.   In doing so, defendant JIMENEZ and other conspirators

22   would often use common mailing addresses for multiple applications to

23   EDD.

24          e.   By submitting the fraudulent EDD applications,

25   defendant JIMENEZ and other conspirators would cause EDD to:

26          i.   authorize pandemic benefits to be provided to

27   individuals who were ineligible for pandemic benefits, including

28   individuals who were ineligible for pandemic benefits because they

4

1  were resided outside the state of California or were deceased,

2  including the victims;

3          ii.    create debit accounts ("EDD debit accounts") with

4  Bank of America in the names of third parties, including the victims;

5  and

6          iii.   cause debit cards linked to the EDD debit

7  accounts at Bank of America ("EDD debit cards") in the names of third

8  parties, including an EDD debit card ending in 6067 issued in the

9  name of I.S., an EDD debit card ending in 4902 issued in the name of

10 M.T., and an EDD card ending in 9312 issued in the name of T.B., to

11 be mailed to addresses listed by the conspirators on the

12 applications, which the conspirators, including defendant JIMENEZ,

13 had access to and controlled.

14      f.    After EDD approved the fraudulent EDD applications and

15 disbursed the pandemic benefits funds to the EDD debit accounts, and

16 Bank of America issued the EDD debit cards linked to those accounts,

17 defendant JIMENEZ and other conspirators would fraudulently assume

18 the identities of the EDD debit account holders and use the

19 corresponding EDD debit cards to make fraudulent cash withdrawals of

20 pandemic benefits from ATMs in in Los Angeles and Orange Counties, as

21 well as others, including at ATMs that Bank of America operated.

22 D.   OVERT ACTS

23      In furtherance of the conspiracy, and to accomplish its object,

24 on or about the following dates, defendant JIMENEZ, and others known

25 and unknown to the United States Attorney, committed various overt

26 acts within the Central District of California, and elsewhere,

27 including, but not limited to:

28

1    <u>Overt Act No. 1:</u>    On July 28, 2020, conspirators
2    electronically filed an application for pandemic assistance benefits
3    in the name of victim N.S., an out-of-state resident, using N.S.'s
4    PII contained in defendant JIMENEZ's ledgers, which application was
5    later approved by EDD.

6    <u>Overt Act No. 2:</u>    On July 29, 2020, conspirators
7    electronically filed an application for pandemic assistance benefits
8    in the name of victim S.S., an out-of-state resident, using S.S.'s
9    PII contained in defendant JIMENEZ's cell phone, which application
10   was later approved by EDD.

11   <u>Overt Act No. 3:</u>    On August 9, 2020, conspirators
12   electronically filed an application for pandemic assistance benefits
13   in the name of victim J.B., an out-of-state resident, using J.B.'s
14   PII contained in defendant JIMENEZ's cell phone, which application
15   was later approved by EDD.

16   <u>Overt Act No. 4:</u>    On August 25, 2020, conspirators
17   electronically filed an application for pandemic assistance benefits
18   in the name of victim D.L., an out-of-state resident, using D.L.'s
19   PII and a common mailing address, which the conspirators, including
20   defendant JIMENEZ and other conspirators, had access to and
21   controlled. which application was later approved by EDD.

22   <u>Overt Act No. 5:</u>    On August 26, 2020, conspirators
23   electronically filed an application for pandemic assistance benefits
24   in the name of victim C.K., an out-of-state resident, using C.K.'s
25   PII and a common mailing address, which the conspirators, including
26   defendant JIMENEZ and other conspirators, had access to and
27   controlled, which application was later approved by EDD.

28

1    <u>Overt Act No. 6:</u>   On August 28, 2020, conspirators
2    electronically filed an application for pandemic assistance benefits
3    in the name of victim S.G., an out-of-state resident, using S.G.'s
4    PII contained in defendant JIMENEZ's cell phone, which application
5    was later approved by EDD.

6    <u>Overt Act No. 7:</u>   On August 28, 2020, conspirators
7    electronically filed an application for pandemic assistance benefits
8    in the name of victim R.B., a victim who died in 2015, using a common
9    mailing address, which the conspirators, including defendant JIMENEZ
10   and other conspirators, had access to and controlled.

11   <u>Overt Act No. 8:</u>   On April 20, 2021, a coconspirator texted
12   defendant JIMENEZ, "It said the funds were put into the account I
13   sent to check rn but she turned this card off or something," to which
14   defendant JIMENEZ responded, "What card."  The coconspirator
15   responded, "The edd one member u gave it to me???" to which defendant
16   JIMENEZ responded "Ya."  The coconspirator continued, "I found it n
17   that's what made me log into her account n that's why I said maybe we
18   can still get money."

19   <u>Overt Act No. 9:</u>   On July 12, 2021, conspirators
20   electronically filed an application for pandemic assistance benefits
21   in the name of victim I.S., an out-of-state resident, using I.S.'s
22   PII contained in defendant JIMENEZ's ledgers, which application was
23   later approved by EDD.

24   <u>Overt Act No. 10:</u>   On July 13, 2021, conspirators
25   electronically filed an application for pandemic assistance benefits
26   in the name of victim T.M., an out-of-state resident, using T.M.'s
27   PII contained in defendant JIMENEZ's ledgers, which application was
28   later approved by EDD.

1    Overt Act No. 11:   On July 30, 2021, conspirators
2    electronically filed an application for pandemic assistance benefits
3    in the name of victim S.O., an out-of-state resident, using S.O.'s
4    PII contained in defendant JIMENEZ's ledgers, which application was
5    later approved by EDD.

6    Overt Act No. 12:   On August 1, 2021, conspirators
7    electronically filed an application for pandemic assistance benefits
8    in the name of victim M.T., an out-of-state resident, using M.T.'s
9    PII contained in defendant JIMENEZ's ledgers, which application was
10   later approved by EDD.

11   Overt Act No. 13:   On August 14, 2021, defendant JIMENEZ, using
12   an EDD debit card ending in 6067, issued in the name of victim I.S.,
13   withdrew $1,000 from a Bank of America ATM in North Hollywood,
14   California.

15   Overt Act No. 14:   On August 15, 2021, defendant JIMENEZ, using
16   an EDD debit card ending in 6067, issued in the name of victim I.S.,
17   withdrew $1,000 from a Bank of America ATM in North Hollywood,
18   California.

19   Overt Act No. 15:   On August 18, 2021, a coconspirator, using an
20   EDD debit card ending in 6067, issued in the name of victim I.S.,
21   withdrew $1,000 from a Bank of America ATM in Orange County,
22   California.

23   Overt Act No. 16:   On August 25, 2021, conspirators
24   electronically filed an application for pandemic assistance benefits
25   in the name of victim M.M.C., an out-of-state resident, using
26   M.M.C.'s PII contained in defendant JIMENEZ's ledgers, which
27   application was later approved by EDD.

28

8

1     <u>Overt Act No. 17:</u> On August 31, 2021, defendant JIMENEZ, using
2 an EDD debit card ending in 4902, issued in the name of victim M.T.,
3 withdrew $1,000 from a Bank of America ATM in San Diego County,
4 California.

5     <u>Overt Act No. 18:</u> On September 3, 2021, defendant JIMENEZ,
6 using an EDD debit card ending in 4902, issued in the name of victim
7 M.T., withdrew $1,000 from a Bank of America ATM in San Diego County,
8 California.

9     <u>Overt Act No. 19:</u> On September 27, 2021, defendant JIMENEZ,
10 using an EDD debit card ending in 9312, issued in the name of victim
11 T.M.B., withdrew $1,000 from a Bank of America ATM in Scottsdale,
12 Arizona.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offense set forth in of this Information.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has

//

//

//

been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

JOSEPH MCNALLY
Attorney for the United States,
Acting Under Authority Conferred by
28 U.S.C. § 515

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JOANNA M. CURTIS
Assistant United States Attorney
Chief, General Crimes Section

RACHEL N. AGRESS
Assistant United States Attorney
International Narcotics, Money
Laundering and Racketeering Section

11